# CARTER v. CARTER,—191 S. W. (2d) 451.

Western Section.   October 31, 1944.

Petition for Certiorari denied by Supreme Court, February 3, 1945.

Poston Cox, of Memphis, for appellant.

Sohm, Humphrey & Ling, of Memphis, for appellee.

ANDERSON, P. J.   This is an uncontested divorce action.   The bill averred that the complainant was a resident of Tennessee and the defendant a resident of the State of Texas.   It was sworn to before a notary public of the latter state.   Conceiving that a jurisdictional question was involved, the Proctor appealed from the final decree and in a very able brief suggests that the chancellor lacked jurisdiction of the subject matter because there was no authority for the affidavit being made before a notary public outside of this state.[1]

---

[1]The question was not made in this case as to whether under the act creating his office and defining his duties, the Divorce Proctor was authorized to perfect an appeal from a decree in a divorce proceeding. Any doubt about this was removed by the Pub. Act of 1945, Chapter 109.

■ A divorce action is purely statutory and the procedure is largely controlled by statute. . Lingner v. Lingner, 165 Tenn. 525, 56 S. W. (2d) 749. Among other provisions is one found in Code Sec. 8431, which provides what the affidavit to the bill or petition shall contain and further, that the affidavit shall be upon oath or affirmation before a justice of the peace, notary public or the judge or clerk of the court. This provision is a codification of the acts of 1799, Chap. 19, Sec. 2, and 1835-36, Chap. 26, Sec. 4.

■ ■ We agree with the Proctor that an affidavit meeting the requirements of the statute is a jurisdictional prerequisite. Compare: DeArmond v. DeArmond, 92 Tenn. 40, 20 S. W. 422; Fitzpatrick v. Fitzpatrick, 131 Tenn. 54, 173 S. W. 444; Wagner v. Wagner, 8 Tenn. Civ. App. 254. Hence the question for decision is whether the notary public of another state is authorized to administer the oath to a divorce bill filed in this state. It cannot be doubted that even a domestic notary public has no such authority at common law. His authority is purely statutory. Campbell v. Brady, 158 Tenn. 98, 11 S. W. (2d) 687; Fawcett v. Chicago, etc., R. R. Co., 113 Tenn. 246, 250, 81 S. W. 839.

■ ■ We also agree with the Proctor that by Code, Section 8431, it was not intended to confer upon nonresidents bearing the official titles described in that section the authority to administer the required oath. It is elementary that legislation can have no extraterritorial effect. It is binding only within the limits of the sovereignty enacting it. It is not to be presumed that by use of language without limitation the legislature intends to confer authority upon persons not within its jurisdiction, although by appropriate language it may authorize designated officials of another state to do specified

acts and make those acts effectual within its own sovereignty. Fawcett v. Chicago, etc., R. R., supra; Bramhal v. Seavey, 28 Me. 45, 48; Chandler v. Hanna, 73 Ala. 390; Smith v. Smith, 185 Ind. 75, 113 N. E. 296; Wills v. Wills, 176 Ind. 631, 96 N. E. 763; Holbrook v. Libby, 113 Me. 389, 94 A. 482, L. R. A. 1916A, 1167.

Hence, it must be determined whether any other provision of the Code authorizes the oath before a foreign notary public. As the briefs assert, the question is of no little importance. Looking at it from the standpoint or society, as he very properly does, the Proctor points out that if it be held that the requisite affidavit may be made before a foreign notary, the efficacy of the remedy of society against perjury would be seriously impaired if not defeated entirely. Upon the other hand, it is said for the complainant, and doubtless true, that the question never before having been raised, many divorces have been granted upon bills sworn to before non-resident notaries public and that to hold with the Proctor would invalidate these with serious consequences which are obvious.

The chancellor held that the oath was valid by virtue of Code, Section 10412, providing that bills in chancery required to be under oath may be sworn to out of the State "before a notary public" and certain other officials who are described by their official titles. Whether this be the correct view is the question for decision. We have given this question the serious consideration demanded by its importance and the zeal with which the Proctor and opposing counsel have presented it. As loath as we are to reach a conclusion that would in any way circumscribe the means available to the Proctor in his very efficient efforts to protect society, we think that, considering the effect upon other divorce decrees of a contrary

view, the chancellor's decision should be sustained if it can be done by adopting any reasonable view of the pertinent statutory provisions.

In the chapter dealing with practice in the chancery court, the Code of 1932, Section 10411, provides that bills required to be under oath may be sworn to in the state before any judge, clerk of the court, justice of the peace or notary public. The next section provides that they may be sworn to out of the state before a notary public or a commissioner for this state or before a judge or justice of the peace of the other state, etc.

The Acts of 1826, Chapter 19, contained the first enactment providing specifically before whom bills in chancery should be sworn to. It provided that bills required to be under oath "in any of the chancery or circuit courts of this state should be sworn to by the complainant before any judge or justice of the peace or the clerk & master of the court in which such bill may be filed of this state," etc. There was no provision in this act authorizing the administering of the oath by non-resident officials, as the reference in Shannon's Code, 6141, seems to indicate.

So far as we can discover the provision relating to that subject now contained in Section 10412 originated with the Code of 1858 as Section 4331. The immediately preceding section provided that bills might be sworn to in the state before any judge, clerk of the court or justice of the peace. The next section was "they may be sworn to out of the state, before a notary public, or a commissioner for this state . . . or before a judge or justice of the peace of the state," etc. In adopting the Code of 1932 (Sec. 10411) the Legislature added notaries public to officials in this state authorized to administer oaths to bills as set out in Code Section 4330 of the Code of 1858.

Section 4331 was carried into the Code of 1932, Section 10412, without modification.

Incidentally, the Code of 1932, Section 8431, also added notaries public to the officials of this state authorized to administer oaths to divorce bills.

In the case of E. W. M. v. J. C. M., 2 Tenn. Ch. App. 463, a divorce action decided before the adoption of the Code of 1932, it was insisted that the affidavit was defective in that it was sworn to before a notary public, whereas Code, Section 2453 (of the Code of 1858), Shannon's Code, Section 4206, required that the affidavit should be sworn to before a justice of the peace or the judge or clerk of the court.

Responding to this contention, the court held that the affidavit was authorized by Chapter 46, Section 3, of the Act of 1866-67, providing that notaries public shall have the same powers of justices of the peace of this state to administer oaths, to take depositions, qualify parties to bills in chancery, and to affidavits, in all cases. The Act referred to was incorporated in Shannon's Code, Section 3196, and is now Section 5896 of the Code of 1932.

"By the express language of this Act," said the Court, "bills in chancery and affidavits in all cases are covered . . ." "It is true," continued the court, "that a subsequent law which is general does not operate as a repeal of a special law upon the same subject without express words declaring an intention to repeal. And therefore a general law will not repeal or affect the provisions of a special act, unless plainly so intended. But here we think the intention is clear and plain beyond dispute; and while the divorce subject is a special subject, the statute was general, and it is clear that the act of 1866 was expressly intended by the legislature to cover every possible case where an affidavit to a bill in chancery was

required, and to provide as a matter of convenience that such affidavits could be taken before notaries public as well as before justices of the peace.''

While the question in that case is not precisely the one before us, we think that by analogy the reasoning of that case warrants the conclusion reached by the chancellor. It seems to us we have a parallel situation; that it was intended by the general statute first enacted by the Code of 1858 to cover the entire subject, notwithstanding the existence of the special statute dealing with the particular subject. If, as held in the case of E. W. M. v. J. C. M., a divorce bill is within the purview of the phrase, ''bills in chancery,'' as used in the Act of 1866-67, Chap. 46, Code of 1932, Section 5896, it seems to us that by a parity of reasoning it must also be held to be within the purview of precisely the same phrase as used in Code Sections 10410, 10411 and 10412.

For the contrary view, the Proctor refers us to Lingner v. Lingner, 165 Tenn. 525, 56 S. W. (2d) 749, which, it is insisted, holds that a divorce bill is not a bill in chancery. It is true, the court there pointed out, that although a divorce suit is in the nature of a suit in equity, it is nevertheless sui generis, the procedure being largely controlled by statute. But what the court there said must be considered in the light of the question before it. This was a contention that the general rule of equity procedure to the effect that no relief will be granted inconsistent with that prayed for applied to divorce cases because they were in the nature of equity suits. The ruling was that rules of equity procedure applied only insofar as that procedure conformed to that prescribed by statute; that insofar as it did not do so, the provisions of the statute are controlling even though contrary to equity procedure generally. It is obvious that the court

did not have under consideration the question we have here as to the scope of Code, Section 10412. Hence we think that nothing in that case can be regarded as controlling the decision in the present one.

The Proctor also contends that Code, Section 10412, contemplates only bills filed under the inherent jurisdiction of the chancery court; but we think this view too narrow, as indicated by other sections in the same chapter in which Code, Section 10412, appears. That section read, as it must be, in connection with Sections 10411 and 10410, by express terms contemplates all bills in, chancery ''required to be under oath,'' and these sections are found in Article 1 of the chapter dealing with ''Practice of the Courts of Chancery.'' Other sections relating to amendments, etc., serve to indicate that the chapter regulates the practice in all suits filed in the chancery courts regardless of whether the jurisdiction exercised is inherent or statutory.

It was suggested in the argument that perhaps one objection to the conclusion we have reached is that since the language of Code, Section 10412 is confined to bills in chancery, it would not in any event authorize foreign notaries to administer an oath to a divorce petition filed in the circuit court and hence to adopt the chancellor's construction would be to make one rule in one court and another in the other court. We think the answer to this suggestion is found in Code, Section 8802, which prescribes that the rules of practice in the chancery court shall apply to all cases in equity ''or in the nature of equity, in all the judicial tribunals, unless otherwise expressly provided.'' That the legislature considered the verification of a bill in chancery a point of practice seems to be conclusively demonstrated by the fact that the statutory provisions above referred to, Code Sections 10410-

10412 regulating the matter, are, as stated, found under the chapter entitled, "Practice of the Courts of Chancery."

One other question was raised by the Proctor in the argument. He suggested that the record did not reflect any evidence that the defendant was a nonresident of the State of Tennessee and a resident of the State of Texas, and that inasmuch as process was by publication, this was an essential element of proof. The case was tried partly on depositions and partly on oral evidence. The oral evidence was not made a part of the record by bill of exceptions and hence we do not know what was shown thereby. In this situation it must be presumed that the missing evidence supplied the requisite proof in the respect mentioned. Code, Section 10622; Goodman v. Goodman, 127 Tenn. 501, 155 S. W. 388; Russell v. Russell, 3 Tenn. App. 232.

The result is that the decree is affirmed at the cost of the defendant.

Baptist and Ketchum, JJ., concur.