IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 25, 2003 Session

## BRENDA HICKS v. JOHN E. HICKS

**Appeal from the Chancery Court for Madison County**
**No. 57184    Joe C. Morris, Chancellor**

_____

**No. W2001-02931-COA-R3-CV - Filed September 29, 2003**

_____

This is a divorce case. At the time the wife filed for divorce, the parties had been married for eight months. The trial judge awarded the divorce to the wife on the grounds of adultery. The trial court also granted the wife a monetary award for "alimony *in solido* and as a division of the marital estate." The husband appeals. We affirm and modify. The proof at trial did not support awarding the wife the divorce on grounds of adultery, nor did it support the amount of the monetary award to the wife. The judgment of the trial court is affirmed but modified to reflect that the wife is granted the divorce on grounds of inappropriate marital conduct, and the monetary award is modified as well.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

David W. Camp and Angela Snider, Jackson, Tennessee, for appellant, John E. Hicks.

Brenda Hicks Oldham, Owensboro, Kentucky, Pro se.

### MEMORANDUM OPINION[1]

Brenda Hicks ("Wife") and John E. Hicks ("Husband") were married on July 10, 1999. The parties had no children together and owned no real property together. When Wife filed for divorce on March 23, 2000, the parties had been married for just over eight months. Wife alleged

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

irreconcilable differences, inappropriate marital conduct, and adultery. Husband denied Wife's allegations, and counter-claimed for divorce on grounds of irreconcilable differences and cruel and inhuman treatment or conduct. After Wife filed for divorce, Husband moved out of the parties' apartment.

Prior to the hearing, the trial court issued an order requiring Husband to provide Wife with a vehicle comparable to the one she had when she entered into the marriage, a 1997 Hyundai ("Hyundai"). Based on the court order, when Husband provided the comparable car to Wife, Wife was to surrender the Chevrolet Blazer ("Blazer") she was driving to Husband. The trial court order also required Husband to pay half of Wife's rent or reimburse her for reasonable moving expenses. The trial court later set aside the order, noting that the car that Wife owned when she entered into the marriage was not a 1997 Hyundai, but rather a 1986 Chrysler ("Chrysler"). The second order did not address reimbursement for Wife's moving expenses.

A hearing was held on July 9, 2001. At the time of the hearing, Husband was fifty years old and Wife was forty-nine years old. Both of the parties testified, and Wife presented the testimony of a private investigator. At the time of the hearing, Wife was employed as an alcohol and drug abuse counselor, earning $1,050 per month. Her income and expense statement indicated that her monthly expenses were $1,643.75.

Wife testified about the parties' vehicles. In 1999, prior to the parties' marriage, Wife purchased a 1986 Chrysler for $1,000. Also prior to the marriage, Wife made eight payments of $305 for a 1997 Hyundai; Husband, however, made the down payment and obtained the financing, and the car was titled in his name. During the marriage, the Chrysler was sold for $450, the Hyundai was sold and the proceeds were used to satisfy the outstanding balance, and Husband leased a Chevrolet Blazer. Wife testified that, after the trial court issued its order requiring Husband to provide Wife with a car comparable to a 1997 Hyundai, Husband purchased another 1986 Chrysler for Wife. Wife asserted that the replacement Chrysler had an oil leak and rotted tires.

Wife also testified that, nine days prior to the parties' marriage, she had received $5,100 as part of an unrelated worker's compensation settlement. She used the money to pay for the parties' wedding and their honeymoon, as well as for furniture.

Wife said that she moved out of the parties' apartment because she wanted a place that she could afford on her own. She incurred over $626 in expenses associated with her move.

Wife also presented the testimony of Janet Morris ("Morris"), a private investigator, regarding her allegations of adultery and inappropriate marital conduct. Morris testified that she traced Husband's cellular telephone records. She found that, in December 1999, Husband made fifteen telephone calls to a number listed to Jean Simmons ("Simmons") in Greenfield, Tennessee. On March 16, 2000, Morris followed Husband to Simmons's home, where he arrived at approximately 8:52 a.m. and remained for at least two hours. On another occasion, Morris saw Husband's truck at the same house at 8:45 a.m. and for at least two and one-half hours thereafter.

Morris provided photographs of Husband's truck parked at the house. On neither occasion did Morris see Simmons or any person who lived at the house. Morris had no other information linking Husband with Simmons or any other woman.

Husband testified that he was a farmer, a member of the Tennessee National Guard, and a State Farm Insurance Company Agent. As an insurance agent, he said, he had an insurance customer who lived at the address that the private investigator had had under surveillance. The client's name, however, was not Simmons, but Patsy Jackson ("Jackson"). Husband acknowledged that he called Jackson from his cell phone, and explained that he visited her home to discuss a claim related to a fire in her home. Husband presented insurance documents showing that Jackson was his client.

Husband's 1998 tax return showed that he earned $50,295 from his insurance business, $8,816 from the Tennessee National Guard and $2,687 in capital gains, and had a $38,000 loss on his farm. His net income for that year was $24,201. The documents in the record on his income after that year are unclear.

Husband testified that he did not want to marry Wife in July 1999 because he had just become divorced from his previous wife on May 25, 1999, and was unable to afford a wedding. This is why Wife paid for the wedding.

Wife's counsel acknowledged that the parties had no joint real property, and that other than the automobiles, the personal property had been separated. The trial judge then asked: "That is what we are here about, the Chrysler and the Hyundai?" Wife's counsel responded that they were also seeking Wife's moving expenses and alimony.

The trial court granted the parties a divorce on the day of the hearing. On November 5, 2001, the trial court issued its final judgment. The final judgment granted Wife the divorce on grounds of adultery and awarded Wife $10,000 as "alimony in solido and as a division of the marital estate" because it appeared

> that the [Wife] paid certain expenses for the benefit of the parties consisting of car payments, and all marriage and honeymoon expenses of the parties from a Workers Compensation claim, and the [Wife] further had to pay moving expenses due to the [Husband] canelling [sic] the lease on the parties' apartment.

Thus, Wife received $10,000 as alimony *in solido* and as a division of marital property. From this order, Husband appeals.

On appeal, Husband asserts that the trial court erred in granting Wife a divorce on grounds of adultery instead of inappropriate marital conduct, and that the trial court erred in awarding Wife $10,000.[2]

Since this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Campbell*, 919 S.W.2d at 35.

Husband first argues that the evidence at trial was insufficient to support awarding Wife a divorce on grounds of adultery. He contends that Wife was required to prove Husband's adultery by a preponderance of the evidence, and that she failed to do so. If we find that Husband was at fault, Husband asks this Court to grant Wife the divorce on grounds of inappropriate marital conduct.

Under section 36-4-101 of the Tennessee Code Annotated, adultery and inappropriate marital conduct are grounds for divorce. Tenn. Code Ann. § 36-4-101(3) & (11) (2001). Circumstantial evidence alone can support an adultery claim. *Abrams Zimmerman v. Ross*, No. 01A01-9201-PB-00036, 1992 Tenn. App. LEXIS 750, at *16-18 (Tenn. Ct. App. Sept. 2, 1992); *Gilliam v. Gilliam*, 776 S.W.2d 81, 84 (Tenn. Ct. App. 1988); *Canning v. Canning*, 443 S.W.2d 502, 505-06 (Tenn. Ct. App. 1968); *Sutton v. Sutton*, 3 Tenn. App. 333, 338-39 (1926). Direct evidence of adulterous intercourse is not necessary. *Id.* In *Sutton*, this Court stated:

> It is not necessary to prove the direct fact of adultery; for, being committed in secret it is seldom susceptible of proof except by circumstances which, however, are sufficient whenever they would lead the guarded discretion of a reasonable and just man to a conclusion of guilt. The courts must, perforce, take such evidence as the nature of the case permits—circumstantial, direct or positive—and bring to bear upon it the experience and observations of life and thus weighing it with prudence and care give effect to its just preponderance. Still, it has been said in weighing the effect of such evidence that it must be so clear and strong as to carry conviction of the truth of the charge, and if it does no more than raise a suspicion of chastity it is insufficient, and that the circumstances must lead to it not only by a fair inference but as a necessary conclusion. . . .

---

[2]Wife, who is proceeding *pro se* at the appellate level, did not file an appellate brief with this Court. Wife was, however, permitted to file a response to Husband's oral argument. Wife's response includes many assertions outside the record from the trial court below. Our jurisdiction is appellate only, and matters outside the record cannot be considered. Therefore, many of the assertions in Wife's response cannot be considered in this appeal.

To justify divorce for adultery, a preponderance of the fact is sufficient; it need not be clear, cogent and convincing.

*Sutton*, 3 Tenn. App. at 338-39 (citations and internal quotation marks omitted).

Here, Wife presented evidence only that Husband visited the home of another woman for 2-3 hours on two separate occasions, and made numerous telephone calls to that address. Husband presented unrefuted evidence that the person he visited in the home was an insurance client. Wife presented no other evidence of adultery. Under the circumstances, we must conclude that the evidence presented by Wife can establish no more than inappropriate marital conduct by Husband. Consequently, the trial court's grant of divorce is modified to grant Wife a divorce on the grounds of inappropriate marital conduct.

Husband next argues that the trial court erred in awarding Wife $10,000 as alimony *in solido* and as a division of marital property. The division of marital property and the awarding of alimony are issues within the discretion of the trial court. *Lindsey v. Lindsey*, 976 S.W.2d 175, 179, 180 (Tenn. Ct. App. 1997). In this case, the trial court awarded Wife $10,000 based on car payments she had made, wedding expenses she had paid, and moving expenses she had incurred when Husband moved out and cancelled the lease on their apartment. However, the car payments made by Wife were made prior to the parties' marriage. Moreover, the record includes no justification for requiring Husband to reimburse Wife because she chose to pay for the wedding and honeymoon, with full knowledge that Husband did not intend to pay such expenses. Consequently, insofar as the trial court's award of alimony *in solido* is based on the car payments and the payment of the wedding and honeymoon expenses, it must be reversed. We find no abuse of discretion, however, in the trial court requiring Husband to reimburse Wife for the expense of moving out of an apartment she could no longer afford and to replace the car she owned when the parties married. The trial court's monetary award is therefore modified from $10,000 to $2,000.

The decision of the trial court is affirmed as modified. Costs are taxed to the appellant, John E. Hicks, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE